1  KEVIN H. MORSE, State Bar No. 253066
   kmorse@clarkhill.com
2  CLARK HILL PLC
   130 E. Randolph Street, Suite 3900
3  Chicago, Illinois 60601
   Telephone: (312) 985-5556
4  Facsimile:  (312) 517-7593

5  Proposed Counsel for Debtor-in-Possession
   BIO365 LLC

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SANTA ROSA DIVISION**

| | |
|---|---|
| In re<br><br>BIO365 LLC<br><br>    Debtor | Case No. 23-10180<br><br>Chapter 11<br><br>**DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING, BUT NOT DIRECTING, DEBTOR TO PAY WAREHOUSEMAN'S LIEN OF ACME DISTRIBUTION CENTERS. INC. FOR RELEASE OF PRODUCT**<br><br>Date:  OST Pending<br>Time:  OST Pending<br>Place:<br>1300 Clay St, Ctrm 220/Zoom<br>Oakland, California 94612 |

Bio365 LLC, debtor and debtor in possession (the "Debtor"), by its proposed attorneys, hereby moves this Court, pursuant to sections 105, 363, 503, and 507 of the United States Code (the "Bankruptcy Code") and Federal Rule of Bankruptcy Procedure 6003, hereby moves the Court for the entry of an order authorizing, but not directing, the Debtor to pay warehouseman's lien of Acme Distribution for release of product (the "Motion").

In support of this Motion, the Debtor relies on the *Declaration of Robert Marcus in Support of Motion for Entry of an Order Authorizing, but not Directing, Debtor to Pay Warehouseman's Lien of Acme Distribution for Release of Product* (the "Marcus Declaration"), attached hereto as **Exhibit A**.  In addition, the Debtor respectfully represents as follows:

**Jurisdiction**

This Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. The consideration of this motion is a core proceeding pursuant to 28 U.S.C. §157(b).

**Background Facts**

On April 12, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California – Santa Rosa Division (the "Bankruptcy Court"), commencing the above-captioned bankruptcy case (the "Bankruptcy Case"). The Bankruptcy Case is pending as a Subchapter V, Chapter 11 case and, as such, no committee or examiner has been appointed in the Bankruptcy Case.

The Debtor currently manufactures nine (9) unique, trademarked, and patented living soil products that are custom formulated for indoor, light deprivation, and outdoor cultivators. However, prior to formulating these first-to-market products, the four co-founders of the Debtor set a mutual goal in 2015 to ensure that children and future generations will have access to abundant, healthy food, and high-quality medicine. To do so, they needed to find solutions to the intermingled threat of dwindling topsoil, poor crop quality, and the instability of climate change. These founders determined that "Controlled Environment Agriculture" – or CEA – can be an important mechanism to help solve the growing threats to agriculture and the climate. The Debtor's CEA breakthroughs made an immediate impact on the marketplace. In particular, given the CEA advances through the Debtor's proprietary, activated, and aged bioCHARGE™, the Debtor's products became the preferred soils in the controlled environment industry to ensure such products are available year-round.

The Debtor filed this Bankruptcy Case to restructure and streamline its operations and propose a plan of reorganization to shed its burdensome operational deficiencies and emerge a healthier company buoyed by the strength of its unique product. It is the Debtor's intention to propose a plan of reorganization that will permit the Debtor to maximize recoveries for its legitimate creditors, ensure the Debtor is only paying for the value it has received on its loans and contracts,

and reach an EBITDA positive position within 12-18 months after emerging from bankruptcy.

The Debtor also intends to continue to supply its loyal customers with its proprietary, activated, and aged bioCHARGE™. To service one of the Debtor's most consistent customers (the "Customer"), the Debtor contracts with Acme Distribution Centers, Inc. ("Acme") to warehouse, store, and distribute the Debtor's product in Acme's warehouse facility in Denver, Colorado pursuant to a *Rate Quotation and Contract* dated January 15, 2020 (the "Contract"). Pursuant to the Contract, Acme is required to store quantities of the Debtor's soil product for delivery to the Customer as needed on a weekly basis. In exchange, the Debtor pays Acme for storage and delivery charges on a per pallet basis and, pursuant to UCC-7, Acme holds a general warehouse lien over all product its possession.

On the Petition Date, in the ordinary course of business, Acme was in possession of certain product of the Debtor for delivery to the Customer. The Debtor owes Acme $9,153.37 for storage of the product through May 2023. The product in possession of Acme is critical for Debtor's on-going relationship with Customer and is worth more to the Debtor at resale value to Customer than the amount owed to Acme. Since the Petition Date, Robert Marcus (the "CRO") has been able to fulfill Customer's purchase order through piecemeal provision of products from the Stockton Facility and Cortland Facility; however, now, it is critical that the Debtor obtain possession of the products in Acme's possession for resale to Customer. The Debtor has attempted to provide alternative methods to ensure payment to Acme, including substitution of collateral and post-petition deposit, but Acme has insisted on payment pursuant to its UCC-7 warehouseman's lien against the product.

The Debtor will net more from the sale of product in possession of Acme to Customer than it will cost to pay Acme's prepetition warehouseman's lien. Furthermore, at this time, the Debtor does not currently have enough product to service Customer's on-going needs while providing product to its other customers. The payment of Acme's secured prepetition claim will benefit the bankruptcy estate and ensure the Debtor's relationship with Customer remains strong and Debtor's operations continue throughout this restructuring process.

/ / /

## Relief Request

By this Motion, the Debtor seeks an order authorizing, but not directing it, to pay the prepetition UCC-7 warehouseman's lien of Acme in the amount of $9,153.37 in exchange for the release of all of Debtor's product stored with Acme.

## Basis for Relief

The Debtor requires the relief requested to avoid immediate and irreparable harm to its business relationship with Customer and provide relief to production constraints created to fulfill the needs of Customer from other sources. The relief requested will provide Debtor income greater than the value of Acme's warehouseman's lien and is a proper exercise of the Debtor's business judgment.

**A.   The Payment of Acme's Secured Claim is a Proper Exercise of Business Judgment**

The payment of Acme's prepetition warehouseman's lien in the amount of $9,153.37 for the release of Debtor's product for sale to Customer is a proper exercise of the Debtor's business judgment.  Section 7209(a) of the California Commercial Code provides Acme with a warehouseman's lien against the property in its possession.  Cal. Comm. Code. § 7209(a). Furthmore, Acme's general lien attaches to all of Debtor's goods that are in its possession and secures all of Debtor's obligations to Acme. *Id.*  Acme would lose its lien against the product if it voluntarily released the product.  Cal. Comm. Code § 7209(e).

Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). The decision to use assets outside the ordinary course of business is entrusted to the sound business judgment of the debtor. *In re Am. Dev. Corp.,* 95 B.R. 735, 737 (Bankr. C.D. Cal. 1989); *In re Dana Corp.,* 358 B.R. 567, 581 n.20 (Bankr. S.D.N.Y. 2006) ("Under applicable case law, in this and other circuits, courts should authorize business transactions outside the ordinary course of business if the Debtors have exercised sound business judgment.").

Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §

4

Case: 23-10180   Doc# 47   Filed: 04/30/23   Entered: 04/30/23 09:30:55   Page 4 of 6
271440848.v1

105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989); *Czyewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 985 (2017) (noting that courts have routinely approved orders that allow payment of prepetition debt, which is necessary for the debtors to reorganize and restructure their debts and maximize the value of the bankruptcy estate). "Under 11 U.S.C. § 105, a court can permit pre-plan payment of prepetition obligations when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *In re Ionosphere Clubs*, 98 B.R. at 177).

The payment of Acme's prepetition warehouseman's lien is a proper exercise of the Debtor's business judgment. Acme has refused to release its lien against the product held until it is paid in full. This refusal is justified and permitted under the California Commercial Code. However, the release of the product subject to the lien is critical to the Debtor's successful reorganization and on-going operations. The Debtor requires this product to fulfill Customer's weekly orders and ensure that Customer does not stop purchasing from Debtor or seek an inferior product from a competitor. The relief required will maintain the Debtor's viability as a going-concern, its critical relationship with Customer, and help maximize the potential for recovery for unsecured creditors. The value Debtor will receive from the product exceeds the $9,153.37 cost to obtain the product from Acme. As such, the payment of the prepetition warehouseman's lien in the amount of $9,153.37 is a proper exercise of the Debtor's business judgment.

**B.     The Requirement of Rule 6003 has been Satisfied.**

Rule 6003 of the Federal Rules of Bankruptcy Procedure provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following
>
> *****
> (b) a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . . .

As shown above, if the relief described herein and supported by the Marcus Declaration is not

5

271440848.v1

granted, the Debtor and its estate will suffer immediate and irreparable harm. During this current transitional period, the Debtor's product manufacturing cannot fulfill Customer's weekly requirement and all other demands. The relief requested is appropriate in order to maintain a profitable relationship with Customer and obtain additional operating cash for the estate. The bankruptcy estate will suffer immediate and irreparable harm if it is unable to fill Customer's orders and maintain key relationships with its vital customers. Additionally, pursuant to the contemporaneously filed order to shorten time, the Debtor is requesting the hearing on this Motion to be heard twenty-one (21) days following the Petition Date.

## Conclusion

The Debtor cannot afford to lose any orders from its customers at this critical time. By the Motion, the Debtor seeks authorization to pay the prepetition warehouseman's lien of Acme for the immediate release and distribution of the product in Acme's possession. Therefore, the Court should grant the Motion and any other relief the Court deems necessary and appropriate

Dated: April 30, 2023                                             CLARK HILL PLC


By:  /s/ Kevin H. Morse
     Proposed Counsel for Debtor
     bio365 LLC